# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DANIEL KEITH MATTHEWS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  03-072 |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Opinion

## <u>MEMORANDUM OPINION AND ORDER</u>

**CONTI, District Judge**

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (ECF No. 953) and a motion for a new trial and for sentencing transcripts and DEA surveillance reports (ECF No. 954), filed by petitioner Daniel Keith Matthews ("Matthews" or "petitioner"). Upon reviewing petitioner's motion to vacate, set aside or correct sentence and the government's response (ECF No. 970), that motion will be denied in all respects except for the claim that petitioner's trial counsel was ineffective because she failed to advise him that if the government filed prior to trial a notice of his prior drug conviction, he faced a mandatory minimum sentence of 120 months. A ruling on the sole remaining issue will be reserved until after a hearing is held. The motion for a new trial, sentencing transcripts, and DEA surveillance reports will be denied.

## I.     Background

On August 5, 2004, in a superseding indictment, Matthews, Larry Lewis Ferguson ("Ferguson"), Michelle Harris ("Harris"), John C. Steele ("Steele"), Roscoe B. Thompson ("Thompson"), and others were jointly charged in count 1 with conspiracy to possess and distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin from November 20, 2002 to February 8, 2003, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(i). (ECF No. 354.)  Matthews was also separately charged in count 16 with possession with intent to distribute and distribution of a quantity of heroin on or about January 11, 2003, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Id.  While ten of Matthews' co-defendants, including Harris and Steele, chose to cooperate and pleaded guilty to the conspiracy count, Matthews, Ferguson and Thompson went to trial before a jury on the counts in which they were charged. (ECF No. 970 at 2.)  On May 2, 2005, prior to jury selection, the government filed an information pursuant to 21 U.S.C. § 851 with respect to Matthews, explaining that a previous state drug conviction would be used to enhance any sentence he might receive from a conviction on the current charges. See ECF No. 456.  Matthews claims he was never informed by his attorney about the impact this filing could have on his ultimate sentence. (ECF No. 953 at 7.)  The initial trial, which began on May 10, 2005, ended in a mistrial due to juror misconduct, see ECF No. 492, and all three defendants were retried beginning on January 12, 2006.

On March 2, 2006, after all the evidence had been presented, the jury found all three defendants guilty of count 1 and Matthews was found guilty of count 16. (ECF No. 644.) Following the verdict, Matthews filed pro se Rule 29 and Rule 33 motions, which were denied by the court as untimely on September 8, 2006. (ECF No. 778.)  His sentencing had been

scheduled for September 29, 2006. Id. After September 8, 2006 and prior to sentencing,

Matthews requested new counsel to replace his trial attorney, Martha E. Bailor ("Bailor"). (ECF

No. 782.) This request was granted, and Sally A. Frick ("Frick") was appointed as Matthews'

counsel on October 2, 2005. (ECF No. 797.) Frick prepared the defendant's Position with

Respect to Presentence Investigation Report, which she filed on January 5, 2007. See ECF No.

862. Matthews continued to file numerous pro se motions, see ECF Nos. 809, 843, 849, 855,

856, 860, and 861. Each of the pro se motions was denied without prejudice by the court

because he was represented by counsel, who, among other things, could address the matters

raised by filing motions on his behalf or at the sentencing hearing set for January 17, 2007. See

ECF No. 866. On that date, the court sentenced Matthews to 120 months of imprisonment to be

followed by eight years of supervised release. See ECF No. 867. The sentence was the statutory

minimum sentence for a violation of 21 U.S.C. § 841(b)(1)(B) because prior to trial a notice of a

prior felony drug offense was filed by the government pursuant to 21 U.S.C. § 851 (the "§ 851

information"). (ECF No. 970 at 4.) The mandatory minimum term was greater than the range

which would have been determined under the Federal Sentencing Guidelines had the government

not filed the § 851 information. The lower range of imprisonment was 70 to 87 months based on

Matthews' base offense level and criminal history category without taking into consideration the

filing of the § 851 information. See id.

Matthews appealed his conviction, arguing, among other things, that the evidence was

insufficient to support his conviction for participation in the heroin conspiracy. United States v.

Ferguson, 394 F. App'x 873, 878 (3d Cir. 2010). In an opinion issued on September 21, 2010,

the Court of Appeals for the Third Circuit affirmed the conviction, finding that the "evidence

presented at trial was more than sufficient to permit a rational trier of fact to conclude that

3

Matthews shared a unity of purpose with the other conspirators to distribute heroin and entered into an agreement to further that objective." Id. at 878.

Matthews continued to file motions pro se, see ECF Nos. 893, 923, 937, 938, and 945, the last of which was filed on December 1, 2010 to "vacate, set aside or correct the sentence" pursuant to 28 U.S.C. § 2255. Because "Matthews might not have been aware of the potential legal consequences when he filed the Motion to Vacate, the Motion for Trial, Supplement and Amended Motion," this court delayed consideration of his motions and provided him with the option, among others, to withdraw the motion and file an inclusive § 2255 motion. (ECF No. 946); see United States v. Miller, 197 F.3d 644, 652 (3d Cir. 1999). Matthews withdrew the previous motions, see ECF No. 952, and filed one all-inclusive § 2255 petition on December 27, 2010, see ECF No. 953. This motion was supplemented three days later with a Motion for New Trial and a Motion for Sentencing Transcripts and DEA Surveillance Reports. (ECF No. 954.)

II.    **Standard of Review**

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). An evidentiary hearing is not required, however, if the court determines that the motion, files, and records of the case conclusively support that the motion should be denied as a matter of law. Id. With this in mind, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Johnson v. United States,

294 F. App'x 709, 710 (3d Cir. 2008) (quoting <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3d

Cir. 2000)).  The district court, however, without further investigation may dispose of "vague

and conclusory allegations contained in a § 2255 petition." <u>Id.</u>

    Under § 2255, a federal prisoner in custody may move the court which imposed the

sentence to vacate, set aside or correct the sentence

> upon the ground that the sentence was imposed in violation of the Constitution or
> laws of the United States, or that the court was without jurisdiction to impose
> such sentence, or that the sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).  In <u>Hill v. United States</u>, 368 U.S. 424 (1962), the Supreme Court of the

United States read the statute as stating four grounds upon which relief can be claimed:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the
> United States," (2) "that the court was without jurisdiction to impose such
> sentence," (3) "that the sentence was in excess of the maximum authorized by
> law," and (4) that the sentence "is otherwise subject to collateral attack."

<u>Id.</u> at 426-27 (quoting 28 U.S.C. § 2255(a)).

    The statute provides as a remedy for a sentence imposed in violation of law that "the

court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him

or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

For this remedy to be appropriate for a claim of ineffective assistance of counsel, there must be a

"showing that counsel made errors so serious that counsel was not functioning as the "counsel"

guaranteed the defendant by the Sixth Amendment." <u>Strickland v. Washington</u>, 466 U.S. 668,

687 (1984).

    The burden is on the petitioner to establish such a claim and requires a petitioner to

prove: (1) deficient representation, meaning that counsel's representation fell below an objective

standard of reasonableness, and (2) prejudice, meaning there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 687, 694.

**III.**    **<u>Discussion</u>**

Matthews makes numerous allegations, all of which suggest "that the sentence was imposed in violation of the Constitution or laws of the United States." § 2255(a). Most of the allegations are vague and conclusory and can be disposed of without further investigation. <u>See</u> <u>Johnson</u>, 294 F. App'x at 710. Other issues must be given consideration. All the issues that can be considered may be grouped into two categories: (1) ineffective assistance of counsel and (2) prosecutor misconduct. Each of these categories will be dealt with in turn.

**A.    <u>Ineffective Assistance of Counsel</u>**

**1.    <u>General framework</u>**

Matthews argues that each of his attorneys, Bailor at trial and Frick at sentencing and on appeal, were ineffective for several reasons. <u>See</u> ECF 953. To support a claim that "counsel's assistance was so defective as to require reversal of a conviction," <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), Matthews must make two showings. "[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." <u>Ross v. Dist. Attorney of the County of Allegheny</u>, 672 F.3d 198, 210 (3d Cir. 2012) (citing <u>Strickland, 466 U.S. at 687</u>). "To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" <u>Ross</u>, 672 F.3d at 210 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 787 (2011)).

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. As both of these components must be demonstrated to support a claim of ineffective assistance, the absence of one negates the need to address the other. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

### 2. **Trial Counsel**

Most of Matthews' arguments with respect to Bailor may be resolved solely based on the lack of the required prejudice. Two examples are that Bailor only made herself available once during the two and one-half years prior to the first trial, (ECF No. 953 at 7), and that she "abandoned" him at a "critical stage of the proceedings," failing to file Rule 29, Rule 33, or Rule 34 motions in a timely manner and filing a motion concerning "prejudicial joinder" six months too late, id. at 10. As "evidence presented at trial was more than sufficient to permit a rational trier of fact to conclude that Matthews shared a unity of purpose with the other conspirators to distribute heroin and entered into an agreement to further that objective," Ferguson, 394 F. App'x at 878, there is no reasonable probability of a different result had either of these circumstances been more to Matthews' liking.

Other arguments raised by Matthews are that Bailor failed to prove that Matthews was not involved in the drug conspiracy and that Michael Good perjured himself. (ECF No. 953 at 10-11.) Those arguments are not sufficient. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. . . . [A] court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." <u>Marshall v. Cathel</u>, 428 F.3d 452, 462 (3d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 689). The inability of an attorney to overcome the evidence adduced by the government, which was more than sufficient to allow a rational jury to come to an adverse conclusion, does not negate this strong presumption.

With respect to trial strategy, Matthews claims Bailor failed to cross-examine prosecution witnesses about their plea agreements and failed to object to "the confusing jury instructions that lessened the burden of proof as to the elements of conspiracy." (ECF No. 953 at 8-9.) Here, as noted above, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Marshall</u>, 428 F.3d at 462 (quoting <u>Strickland</u>, 466 U.S. at 689). The inquiry is whether Bailor's tactical decisions were "objectively reasonable and conformed to professional norms based 'on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>United States v. Orocio</u>, 645 F.3d 630, 639 (3d Cir. 2011) (quoting <u>Lewis v. Johnson</u>, 359 F.3d 646, 655 (3d Cir.2004)). Defense counsel wanted to impeach certain government witnesses by asking them about their plea agreements, but requested the court to preclude the government from asking the witnesses about the reduced sentences those witnesses received after the court granted the motions made by the government to reduce their sentences based upon the substantial assistance those witnesses provided to the government. <u>See</u> U.S. Sentencing Guidelines Manual § 5K1.1; Fed R. Civ. P. 35(b). The court advised the parties that if defense counsel asked a witness about his or her plea agreement, the government would not be precluded from asking the witness questions about a reduction in his or her sentence. (TT 1/31/06 at 172.) The decision not to question certain defendants about plea agreements was therefore reasonable because it prevented the government from being permitted to question the witness about receiving a reduced sentence. Thus, this decision fell within the

wide range of reasonable professional assistance despite the viable counterargument that such information was more valuable to the defense for impeachment purposes than to the government for validation of witness testimony.

Bailor's decision not to challenge the jury instructions was objectively reasonable. If "counsel need not, and should not, raise every non-frivolous claim," a frivolous challenge like this need not be raised. <u>Showers v. Beard</u>, 635 F.3d 625, 634 (3d Cir. 2011) (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000)). The charge correctly addressed the elements of conspiracy and appropriately discussed the "buyer-seller" relationship that Matthews was arguing existed. (TT 2/21/06 at 33-36.) Neither strategic decision by Bailor was unreasonable to an extent that would render her assistance ineffective.

Matthews' most compelling argument that Bailor's assistance was ineffective concerns his decision to proceed to trial instead of pleading guilty. The record does not provide this court with sufficient information to make a determination with respect to this argument. Matthews asserts he "would have opted for an early open plea maybe for a lesser offense," had Bailor informed him about how his prior felony drug conviction could be used by the government to cause his minimum sentence by statute to be a mandatory 120 months. (ECF No. 953 at 7.) Even if Bailor's performance was deficient for failing to apprise Matthews of the risks of proceeding to trial rather than pleading guilty, the prejudice prong of the <u>Strickland</u> test must still be met. To show prejudice there must exist a reasonably probable scenario in which Matthews would have received a shorter sentence had he plead guilty. Under 21 U.S.C. § 841, when a defendant is convicted for taking part in a drug conspiracy involving "100 grams or more of a mixture or substance containing a detectable amount of heroin. . . . after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may

not be less than 10 years." 21 U.S.C. § 841. This increased punishment, however, will not apply unless "the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon . . . before trial, or before entry of a plea of guilty." 21 U.S.C. § 851.

Given Matthews' conviction on count 1 and the government's filing of the information pursuant to § 851 on May 2, 2005, seven days prior to jury selection on May 9, 2005, <u>see</u> ECF No. 456, Matthews received the shortest possible sentence allowable under § 841 – ten years, <u>see</u> 21 U.S.C. 841(b)(1)(B)(viii). Even if Matthews had entered an open guilty plea to count 1 as opposed to being convicted of it at trial, § 841 dictates that his sentence could not have been any shorter, considering his prior felony drug conviction detailed in the government's § 851 information. The only possible scenario in which Matthews could have been prejudiced by the alleged lack of guidance concerning the potential impact of the filing of a § 851 information would be if there was a reasonable probability Matthews would have plead guilty prior to the government filing the § 851 information.

An information must be filed "before trial, or before entry of a plea of guilty." 21 U.S.C. § 851. It is clear the government would have the opportunity to file the information before a proposed guilty plea would be entered.[1] At the very latest, this opportunity would present itself at the hearing which must be held in order for the plea to be entered. <u>See</u> FED R. CRIM. P. 11(b)(1) (stating "[b]efore the court accepts a plea of guilty . . . the court must address the

_____

[1] Courts which have directly considered this issue find that entry of a plea of guilty occurs at the plea hearing, not when the plaintiff simply files a "Notice of Entry of Plea of Guilty." <u>See</u> <u>United States v. Duffy</u>, 179 F.3d 1304, 1305 (11th Cir. 1999). In <u>Duffy</u>, the court ruled that the government's filing of the § 851 information in open court during the defendant's plea hearing complied with the requirements of § 851. <u>Id.</u>

defendant personally in open court").  Matthews, therefore, could not have precluded the government from filing a § 851 information by pleading guilty.

It is clear that the government would have had the ability to file the § 851 information in the event of an unbargained-for guilty plea by Matthews.  It is much less clear, given the information available to this court, whether the reasonable probability exists that the government would *not* have filed the information if Matthews had pled guilty.  The government argued that "Matthews did not cooperate with the government and declined to accept a plea offer" (ECF No. 970 at 18.)  The available facts show: (1) the government filed § 851 informations against only Matthews and his two co-defendants who went to trial, Ferguson and Thompson, and those informations were filed a week before their trial began; and (2) the government did not file § 851 informations against co-defendants who accepted plea offers.  One could speculate that the government attempted to negotiate a plea deal with Matthews, which included not filing a § 851 information, and when negotiations proved unsuccessful, filed the information.

Conjecture, however, is not proper.  The record does not reflect whether Matthews was offered a plea deal or what the terms of any potential deal might have been or whether Bailor advised him about what impact the filing of a § 851 information could have on a sentence.  Whether the entry of a guilty plea from Matthews would have been considered sufficient by the government to warrant withholding the § 851 information cannot be determined from the record before the court.

Without an evidentiary hearing, this court is unable to determine whether Bailor failed to advise Matthews about the impact the filing of a § 851 information would have on a possible sentence, whether he would have pleaded guilty, and whether the reasonable probability exists that the government would have still filed the § 851 information if Matthews had decided to

plead guilty.  An evidentiary hearing will be necessary to permit Matthews and the government

the opportunity to present evidence about these matters. See Lafler v. Cooper, 132 S.Ct. 1376,

1389 (2012) ("[T]he court may conduct an evidentiary hearing to determine whether the

defendant has shown a reasonable probability that but for counsel's errors he would have

accepted the plea."). In order for Matthews to show "a reasonable probability that, but for

[Bailor's] unprofessional errors, the result of the proceeding would have been different," Ross,

672 F.3d at 210, he will need to show: (1) he was not informed by his counsel about the

implications that a filing of a § 851 information could have on his minimum sentence; (2) if he

had known about that risk, he would have pled guilty; and (3) if he had pled guilty, the

government would not have filed the § 851 information. This scenario is the only one which

would support a "probability sufficient to undermine confidence in the outcome." Id.

### 3. Sentencing and Appellate Counsel

With respect to Frick, his sentencing and appellate counsel, Matthews points to numerous

alleged instances of ineffective assistance.  Most of these arguments concern Frick's

unsuccessful challenges to Matthews' ultimate sentence, her challenges or lack of challenges to

the sufficiency of evidence at trial which Frick either made fruitlessly or chose not to make, and

instances where Frick's strategies did not align with Matthews' strategies.[2]  While each of these

---

[2] Matthews makes the following arguments: (1) Frick allowed the court to rely on the "false"
information at sentencing that Michael Good had given drugs to Matthews on two separate
occasions (ECF No. 953 at 13); (2) Frick incorrectly conceded the amount of heroin pertaining to
count 1 as being in excess of 100 grams (id. at 14); (3) Frick allowed the prosecutor to "pile
inference upon inference" in conflict with the testimony given by agent Mauricio Jimenez and
detective Jack Murray (id. at 14-15); (4) Frick incorrectly conceded to four grams of heroin
being five years under the sentencing guidelines for count 16, resulting in the sentence of 120
months (id. at 15); (5) Frick's brief was well under the word count (id. at 16); (6) Frick failed to
file a reply brief highlighting false statements made in government's reply (id.); (7) Frick failed

arguments could likely be disposed of on other grounds, including the argument that Frick's

performance was not deficient, this court will consider them collectively under the second prong

of the Strickland test.  In Strickland, the Supreme Court explained, "[i]f it is easier to dispose of

an ineffectiveness claim on the ground of lack of sufficient prejudice [the second prong] . . . that

course should be followed." Strickland, 466 U.S. at 697.

To prevail in any of these arguments, Matthews "must show 'a reasonable probability

that, but for his counsel's failure . . ., he would have prevailed on his appeal.'" Boggs v.

Diguglielmo, 264 F. App'x 165, 168 (3d Cir. 2008) (quoting Smith v. Robbins, 528 U.S. 259,

285 (2000)).  A reasonable probability is a probability sufficient to undermine confidence in the

outcome." Strickland, 466 U.S. at 694.  "We must consider the totality of the evidence because

'a verdict or conclusion only weakly supported by the record is more likely to have been affected

by errors than one with overwhelming record support.'" Hanson v. Dragovich, 426 F. App'x 50,

55 (3d Cir. 2011) (quoting Strickland, 466 U.S. at 696.).  There is no such concern for a weakly

supported conviction here.  The Court of Appeals for the Third Circuit noted on appeal that

> testimony, viewed in a light most favorable to the Government,
> easily undermines Matthews's argument that he was a mere
> purchaser of personal-consumption heroin. Good's testimony
> demonstrates that Matthews played a pivotal role in distributing

---

to raise appeals based on violations of Federal Rules of Evidence 402, 403, and 404(b), because
the prosecutor only used information about Matthews' prior offense to prove "propensity and
bad character." (id. at 19); (8) Frick failed to challenge the lack of evidence produced by the
prosecution to prove motive or intent (id.); (9) Frick cited decisions dealing with tax fraud
instead of the decisions Matthews found dealing with drug conspiracies. (id. at 20); (10) Frick
failed to consult with Matthews on objections to his presentence report (id. at 21); (11) Frick did
not honor Matthews' request for copies of the trial transcripts so he could show the court he did
not receive the amount of heroin alleged (id. at 14); and (12) Frick failed to consult with him
about the issues to be raised on appeal, and instead "filed whatever she wanted," and failed to
raise "ineffective assistance at trial" and "prejudicial joinder" (id. at 16, 20).

heroin within the organization. Moreover, the record is replete with testimony and other evidence that many of the drug deals within the Good conspiracy took place at Matthews's mother's residence, that Matthews registered one of Good's cellular phones in his own name, and that Good and Matthews shared a close personal friendship. The evidence presented at trial was more than sufficient to permit a rational trier of fact to conclude that Matthews shared a unity of purpose with the other conspirators to distribute heroin and entered into an agreement to further that objective.

Ferguson, 394 F. App'x at 878.

None of Matthews's arguments referenced above are sufficient to "undermine confidence in the outcome." Strickland, 466 U.S. at 694. Had Frick raised the issues suggested by Matthews and performed more to Matthews' satisfaction, there is still not a reasonable probability that the court of appeals would have viewed the findings of the jury to be any less rational. Concerning Frick's alleged failings at sentencing, none of the arguments Matthews suggests, if made successfully, could have reduced the sentence received – a mandatory minimum sentence – below that which was given. As mentioned previously, Matthews' conviction for taking part in a conspiracy to distribute "100 grams or more of a mixture or substance containing a detectable amount of heroin," 21 U.S.C. § 841, dictates a mandatory minimum sentence of 120 months when the government has timely filed a § 851 information, see 21 U.S.C. §§ 841, 851. The length of the sentence Matthews is currently serving is the mandatory minimum. With no reasonable probability of a different outcome discernible given any of these arguments, Matthews' claims of ineffective assistance of Frick in each instance are without support.

There are two arguments that, while also unavailing, require more specific analysis. First, Matthews states that Frick was ineffective in arguing that the three years he spent on house arrest prior to conviction should be credited against his sentence of eight years of supervised release. (ECF No. 970 at 32.)   Under the Strickland analysis, Matthews was not prejudiced by that

alleged failure. "The authority to calculate a federal sentence and provide credit for time served has been delegated to the Attorney General, who acts through the BOP." <u>Savage v. Zickefoose</u>, 446 F. App'x 524, 526 (3d Cir. 2011) (citing <u>United States v. Wilson</u>, 503 U.S. 329, 333–35 (1992)).  Thus, this court could "not reach the question of whether house arrest can in fact qualify as pretrial detention. The issue of whether there has been proper credit of any prior custody to the term of [Matthews'] sentence is not ripe." <u>United States v. Brann</u>, 990 F.2d 98, 103 (3d Cir. 1993).  Matthews would have to have exhausted his administrative remedies through the Bureau of Prisons before this court could consider the issue.  Therefore, any ineffectiveness by Frick in arguing this point resulted in no prejudice to Matthews.

Second, Matthews argues that Frick failed to raise "the most important issue . . . the Batson issue." (ECF No. 953 at 17.) Matthews failed to raise this issue at the trial level. Had the issue been raised by Frick on appeal, it would have been subject to plain error review[3] by the court of appeals. <u>See</u> Fed R. Crim. P. 52(b); <u>United States v. Olano</u>, 507 U.S. 725, 731 (1993). In <u>Batson</u>, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986).  Under <u>Batson</u>,

> a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the

---

[3] "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993) (quoting <u>United States v. Young</u>, 470 U.S. 1, 15 (1985)).

> defendant is entitled to rely on the fact, as to which there can be no
> dispute, that peremptory challenges constitute a jury selection
> practice that permits "those to discriminate who are of a mind to
> discriminate." Finally, the defendant must show that these facts
> and any other relevant circumstances raise an inference that the
> prosecutor used that practice to exclude the veniremen from the
> petit jury on account of their race.

Id. at 96 (internal citations omitted). While it is clear that Matthews could meet the first and second requirements to establish a prima facie case of purposeful discrimination, the only relevant circumstance he mentions pertaining to the final requirement is that the "prosecutor made sure the only black female did not get on the jury." (ECF No. 853 at 18.) The dismissal of a single African American juror, regardless whether she was the only member of that race in the venire, is not sufficient to raise, by itself, an inference that the prosecutor did so in an attempt to exclude that race from the jury. Therefore, Matthews' Batson argument is meritless as a prima facie case cannot be established. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Matthews also attacks the entire selection process for the venire members. (ECF No. 853 at 17.) Matthews argues that "the entire jury pool only had one African American," and this was an "under representation [sic] of African Americans in the jury pool." Id. "[A]ll litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. At the time Matthews' second trial took place in 2005, this court selected jurors for service on grand and petit juries according to a jury selection plan (the "jury plan"), which was adopted by this court and approved by a reviewing panel for the Third Circuit Judicial Council. The jury plan in 2005 became effective on April 1, 2001. In order for Matthews

to establish the jury plan violated  the "fair cross section requirement" of § 1861,  he must satisfy

the elements of the test set forth by the Supreme Court of the United States in <u>Duren v. Missouri</u>,

439 U.S. 357, 364 (1979), which provides:

> the defendant must demonstrate: (1) the group alleged to be
> excluded is a "distinctive" group in the community; (2) the
> representation of this group in jury venires is not "fair and
> reasonable" in relation to the number of such persons in the
> community; and (3) the underrepresentation is caused by the
> "systematic exclusion of the group in the jury selection process."

<u>United States v. Weaver</u>, 267 F.3d 231, 237 (3d Cir. 2001) (quoting <u>Duren v. Missouri</u>, 439 U.S.

357, 364 (1979)).  Once a defendant establishes the elements of the <u>Duren</u> test, "the burden

shift[s] to the government to justify its jury selection procedure."  <u>United States v. Green</u>, No.

10-186, 2011 WL 4737601, at *3 (W.D. Pa. Oct. 6, 2011). The jury plan served as the

government's jury selection procedure for Matthews' trial.

Matthews can establish the first element of the <u>Duren</u> test "because African-Americans

have been found to be a distinct group." <u>Green.</u> 2011 WL 4737601, at *3 (citing <u>Weaver</u>, 267

F.3d at 240). Matthews, however, did not present factual allegations implicating the second and

third prongs of the <u>Duren</u> test.

> In analyzing whether these <u>Duren</u> requirements are satisfied, the
> Third Circuit has instructed that we should consider factors such as
> "the nature of the process by which jury lists are composed, the
> length of time of underrepresentation, and the strength of the
> evidence that purports to establish an 'unfair and unreasonable'
> representation...." The Third Circuit subsequently clarified that the
> strength of the evidence should be considered under the second
> prong, and the nature of the process and the length of time of
> underrepresentation should be considered under the third.

<u>Green</u>, 2011 WL 4737601, at *3 (quoting <u>Ramseur v. Beyer</u>, 983 F.2d 1215, 1235 (3d Cir.

1992), and <u>Weaver</u>, 267 F.3d at 241) (citations omitted). In <u>Green,</u> the defendant filed a motion

to dismiss the indictment because there were no African-Americans on the grand jury that indicted him. Green, 2011 WL 4737601, at *1. The defendant argued the jury plan,[4] which relied on voter registration lists to select the grand jury, caused the underrepresentation of African-Americans on the defendant's grand jury and violated the fair cross section requirement of § 1861 and his equal protection rights under the Fifth Amendment to the United States Constitution. Id. The court held the defendant satisfied the first Duren prong because African-Americans are a distinct group. Id. at *3. The court found the defendant did not satisfy the second prong because he had "not conducted any studies or presented any relevant statistical evidence to establish that the representation of African-Americans on grand juries in the Pittsburgh Division [was] not fair and reasonable in relation to the number of such persons in the community." Id. at *4. The court found defendant did not satisfy the third prong of Duren because having no African-Americans on the jury was not a basis for the court to find systematic exclusion. Id. at *5. Based on this analysis, the court concluded defendant had not made the prima facie showing that the jury plan violated the fair cross section requirement of § 1861. Id. The court found based on an equal protection analysis that defendant did not establish that the jury plan violated his Fifth Amendment rights and denied defendant's motion to dismiss the indictment. Id.

Here, like the defendant in Green, Matthews did not present factual allegations to support his argument that the representation of African-Americans in jury venires in the Western District of Pennsylvania was not "fair and reasonable" in relation to the number of African-Americans in

---

[4] The jury plan in Green became effective on April 1, 2009 and is substantively the same as the jury plan used to select Matthews' jury pool in that it relies on voter registration lists from the same thirteen counties to select jurors.

the community. The second prong of the <u>Duren</u> test is, "at least in part, a mathematical exercise, and must be supported by statistical evidence." <u>Weaver</u>, 267 F.3d at 240 (citing <u>Duren</u>, 439 U.S. at 364). "Initially, the defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." <u>Duren</u>, 439 U.S. at 364. Matthews failed to make this initial showing. The only allegations Matthews presents in his brief are the following:

> There are a number of African-Americans that are registered voters. The jury pool was made up of people who did not live within a 7 mile radius of the city of Pittsburgh where most African-Americans live. The zip codes and area codes were from places only a few blacks lives [sic].

(ECF No. 953 at 17.) In light of the jury plan, which selected jurors from voter registration lists in thirteen different counties, and the lack of statistical evidence, Matthews' statements are an insufficient basis for the court to find the need for a hearing on whether the jury plan provided for an unfair and unreasonable selection process.

Matthews also failed to present factual allegations to support that the alleged underrepresentation of African-Americans in jury pools was caused by "systematic exclusion of the group in the jury selection process." <u>Duren</u>, 439 U.S. at 364. As Matthews notes and the jury plan provides, individuals are chosen to be venire members based on voter registration lists from the thirteen different counties. (ECF No. 953 at 17.) Any group which may be underrepresented in this system, therefore, has excluded itself by not registering to vote. Self-exclusion, however, may be grounds for a violation of §1861 "if the use of voter registration lists over time [has] the effect of sizeably underrepresenting a particular class or group on the jury venire." <u>Weaver</u>, 267 F.3d at 244.

Here, Matthews did not set forth factual allegations to support that using voter registration lists has excluded African-Americans from the jury pool over time. Matthews' conclusory statements that African-Americans were excluded from the jury pools in his first and second trials is not a sufficient basis to find the jury plan's reliance on voter registration lists has caused a systematic exclusion of African-Americans. In United States v. Rickard, 336 F. App'x 235, 239 (3d Cir. 2009), the Court of Appeals of the Third Circuit found the observation that the jury pool only had one African-American was not evidence of systematic exclusion. The court found, "[a]t best, it is evidence that an underrepresentation has occurred once, but it does not shed any light on its cause." Compare id., with Duren, 439 U.S. at 366 (finding systematic exclusion where defendant presented "undisputed [evidence] that a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year"). Matthews argued African-Americans were underrepresented twice in his jury pools, but did not set forth the factual support to show that the use of voter registration lists has excluded African-Americans from jury pools over a period of time. Matthews' arguments relating to jury composition fail to meet the "deficient performance" prong of the Strickland test because '[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." Sanders, 165 F.3d at 253.

B.  **Prosecutorial Misconduct during Trial and on Appeal**

Matthews makes several claims that actions by Assistant United States Attorney Troy Rivetti ("Rivetti") at trial and Assistant United States Attorney Laura Irwin ("Irwin") on appeal amounted to prosecutorial misconduct.  Matthews' first allegation of prosecutorial misconduct is that Rivetti violated 18 U.S.C. § 201 by offering favorable treatment to witnesses concerning

pending legal actions against them which caused them to perjure themselves. (ECF No. 953 at 24-25.)  Section 201(c)(2) provides in pertinent part:

> Whoever . . . directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . authorized by the laws of the United States to hear evidence or take testimony . . . shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2).  The Court of Appeals for the Third Circuit has aligned with "every other circuit court that has considered the issue," in holding "that section 201(c)(2) does not prohibit the government from promising leniency to cooperating witnesses in exchange for truthful testimony." United States v. Hunte, 193 F.3d 173, 174 (3d Cir. 1999).  Matthews' argument here is, thus, unavailing.

Matthews raises numerous arguments with respect to false statements and perjured testimony either used or allowed by Rivetti at trial and Irwin on appeal.[5] These allegations range from being completely conclusory to being argued in great detail.  Regardless of the respective level of the arguments, each allegation appears to be an attempt to again raise issues relating to the sufficiency of evidence.  "'[I]t is not enough that the testimony is challenged by another witness' for it to be considered perjured." United States v. Jackson, 192 F. App'x 96, 99 (3d Cir. 2006) (quoting United States v. Payne, 940 F.2d 286, 291 (8th Cir.1991)). Questions relating to

---

[5] Matthews makes the following arguments under this topic: (1) Rivetti used perjured testimony to convict and vouched for perjured testimony at sentencing (ECF No. 953 at 22); (2) Rivetti elicited testimony from Raymond Moon which was perjured, because Raymond Moon was unable to recall the floor plan of Matthews' home (id.); (3) witnesses used "coached perjured testimony," which was contradicted by the federal agents and was not corrected by Rivetti (id. at 25); (4) Irwin made false statements in her appeal brief concerning Matthews' use of coded language (id. at 27); and (5) Irwin's appeal brief is "replete with false statements of fact (id.).

sufficiency of evidence have already been dealt with at trial and, after the jury made the required determinations regarding credibility, on appeal. "Section 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal."" United States v. DeRewal, 10 F.3d 100, 105 (3d Cir. 1993) (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir.1986)). Matthews' questions relating to the use of alleged false testimony, therefore, need not be further considered.

Even if the false or perjured testimony was presented during the trial, these claims are currently procedurally defaulted. "[I]f the information which is the focus of the petition was known to the defense at a time when it could have been acted upon before the trial ended and if such fact is revealed by the record, no evidentiary hearing is required under § 2255. Brown v. United States, 556 F.2d 224, 227 (3d Cir.1977). "Thus, Brown holds that a defendant's knowledge of perjury coupled with his ability to act on it at trial is fatal to a § 2255 claim." United States v. Biberfeld, 957 F.2d 98, 104 (3d Cir. 1992). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted). Matthews discusses the prejudice he believes resulted from these claims in great detail throughout his petition. He never addresses, however, the reasons these claims were not advanced at trial or on appeal. The "cause and prejudice" branch of the Bousley test is therefore not met. The only remaining question here is whether Matthews established his "actual innocence." "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (internal citations

omitted)). Based on the previously-discussed determination on appeal by the court of appeals, Matthews cannot meet this standard. Matthews' claims that false information and perjured testimony were used and allowed are, therefore, procedurally defaulted in addition to having been previously litigated. Because Matthews' supplemental motion for a new trial and sentencing transcripts and DEA surveillance reports (ECF No. 954) was made solely for the purpose of supporting these claims, it is rendered moot and will be denied.

Matthews' remaining arguments deal with issues for which determinations were made by this court and affirmed on appeal. First, Matthews argues that testimony about heroin and crack deals not relating to him was prejudicial. (ECF No. 853 at 22.) Prior to this testimony being heard, this court decided that severance was not required, and instructions were provided to the jury on compartmentalizing evidence. (TT 2/2/06 at 35-36; TT 2/9/06 at 103; TT 2/21/06 at 14-15.) No error was found with this decision on appeal. Matthews next argues that the prejudicial phrase "last trial" was used numerous times throughout the trial by Rivetti. (ECF No. 853 at 23.) It is true, as Matthews points out, that at the beginning of the trial, the words "last trial" were not to be used during the trial due to their prejudicial nature. As the government points out in response, however, Matthews ignores that clarification was required during the trial about the prior trial during the course of questioning, and the phrase "last trial" was permitted to be used. (ECF No. 970 at 46.) Rivetti's use of the phrase was, therefore, not misconduct.

Next, Matthews asserts that Rivetti manipulated the court into limiting cross-examination to prevent questions about the plea deal of Raymond Moon ("Moon"). (ECF No. 953 at 8.) Prior to the second trial, Moon received a sentence reduction because the court granted the government's motion to reduce his sentence based upon his substantial assistance to the government. Bailor did not question Moon about his plea agreement in order to prevent Moon

23

from being able to testify that his sentence was reduced. (TT 1/31/06 at 167.) A tactical decision was made by Bailor and it was not the result of a manipulation that could qualify as misconduct by Rivetti.

Matthews argues that prosecution witness Sherri Hunter ("Hunter") should not have been allowed to testify against him, because there were no recorded conversations in which she referred to Matthews or instances where agents saw Hunter near Matthews' home. (ECF No. 953 at 25.) These alleged shortcomings, however, do not defeat the relevance of Hunter's testimony during the jury trial, which involved two other defendants. (ECF No. 970 at 48.) Finally, Matthews argues Rivetti "purposely addressed questions to implicate [Matthews] on direct exam of all govt. witnesses." (ECF No. 953 at 26.) The prosecutor's job with respect to the defendant in a criminal trial includes asking those kinds of questions, and the questioning cannot be considered prosecutorial misconduct.

## IV. Conclusion

For the reasons set forth above, Matthews' motion will be denied except for his claim that his trial counsel was ineffective in failing to advise him about the risk of going to trial rather than pleading guilty in light of the consequences of the filing of a § 851 information. A hearing will be scheduled to consider whether Bailor properly apprised Matthews about the implications his prior felony drug conviction could have on a potential sentence, and, if not, is there "a reasonable probability that, but for [Bailor's] unprofessional errors, the result of the proceeding would have been different." Ross, 672 F.3d at 210.

## V. Order

AND NOW, this 27th day of August, 2012, upon consideration of petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255

24

(ECF No. 953), the accompanying motion for a new trial, sentencing transcripts and DEA surveillance reports (ECF No. 954), and the government's response (ECF No. 970),

IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (ECF No. 953) is DENIED with respect to all issues, except for the single issue whether petitioner was effectively counseled concerning his decision to proceed to trial instead of pleading guilty in light of his prior felony drug conviction which would be the basis for a § 851 information and would enhance any resulting sentence. The court determines that petitioner is entitled to an evidentiary hearing on that issue. Accordingly, the court shall hold an evidentiary hearing and the court shall appoint an attorney to represent petitioner if petitioner qualifies to have counsel appointed under 18 U.S.C. § 3006A. See R. Governing § 2255 Cases R. 8(c) ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed. . . .") (emphasis added).

IT IS FURTHER ORDERED that an evidentiary hearing shall be held at **1:00 PM** on **October 17, 2012**.

IT IS FURTHER ORDERED that petitioner's motion for a new trial, sentencing transcripts and DEA surveillance reports (ECF No. 954) is DENIED.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge